tempted, but I want you to say it for me. Yes, Your Honor. Aristotelevis, or as we say in Texas, Aristotle Levis. Okay. Your name has been Texanized? Just for the sake of allowing people to say it, Judge. Okay. It's Greek, right? It is, very much. Okay. What part of Greece? My father, his family originated in what is now Turkey, Asia Minor. They were refugees, and he was never actually in Greece. He was born in Paris. He was the youngest of several kids. I thought that was a short answer question. As long as it's my last name, Judge. All right. Thank you, sir. You're on. Thank you, Judge. May it please the Court, Counsel. The appellant's case presents a novel question of a law whose resolution is necessary to give guidance to law enforcement officers and to other magistrate judges. What do we have in this case? We have isolated incidents, two specifically, of a person of unknown origin using a phone of unknown ownership and provenance at a residence. We don't know what relationship this person has with the residence. We do know the person has about 30 days' worth of access to the Wi-Fi. That is all we have. Two isolated incidents. One of the images was uploaded by use of the Wi-Fi for the residence, and the other was uploaded by use of the iPhone's own stand-alone Internet service. That is the information that the agents had. And with this information, the only two possible conclusions could be the following possibilities. That there was a temporary resident of no more than 30 days at the house at the time. The other, equally plausible, is that there was a stranger who was using this home's Wi-Fi service somewhere in the vicinity of whatever it is, 50 feet to 100, could have been a neighbor. I have provided the court numerous instances, just by doing a simple Google search, of cases where neighbors have been arrested by using another neighbor's unprotected Wi-Fi service to download child pornography. This is very much a problem, and it's something that's developed with technology. So, given this information, what is it that makes this case so unique as to allow me to ask the court to consider the probable cause question before the ordinary and conventional good faith standard application to a search warrant? Two words, cell phone. Cell phones are unique. Cell phones have changed the Supreme Court's Fourth Amendment jurisprudence since 2014. Ever since Jones started, it continued on with Riley by requiring a search warrant for all of the information contained in a cell phone, and most recently, in Carpenter, from which I have borrowed some language that I think is instructive to this honorable court in deciding the merits of this first, second, and third issues. I will quote, first of all, I will make the point, the government makes the point and the agent did at the hearing, that cell phones are computers. That is true. Cell phones are computers, but there are much more. The converse, however, is not true. Computers are not cell phones. Cell phones are carried by people everywhere all the time, and people do everything with cell phones now that they can't even do with computers. This is an important point in this issue because the fact that the person could have, the person that was detected committing these two uploads could have committed this crime without any use of computers, we don't even know there were computers in the house. Before you just continue on this, just a threshold question. At the suppression hearing, right in the first remark, you were very clear you weren't seeking to suppress your client's statements confessing to being Alex and the photos. We initially raised the issue, but then withdrew it. Right. And then that's not an appeal. So even if you were to prevail on this issue, since it's a conditional plea, your client has confessed to being Alex and to have uploaded the photos. What would happen even if you were to prevail with that confession not being challenged? Your Honor, I believe that there's an additional analysis that the court has to conduct in situations I believe they call the independent source doctrine. When you have a search the way it occurred in this situation, and agents enter the house and do the seizure, and then, well, they escort my client out of his bedroom into a car. The court has to be satisfied that there were no, that none of that had anything to do with the matter in which. But you haven't pursued that. Below, you accepted that his confession was valid. I do believe, yes, Your Honor, but I do believe that the court still has to make a finding, and the government hasn't argued that there's an independent source. That that confession somehow validates the admission of the evidence. So you'd want to undo the plea anyway if you were to prevail just on what you're attacking. The second sort of threshold question I have is what would, how would your client have standing to raise a carpenter claim against obtaining the father's account information? That's a very good question, Judge. Carpenter did not address that issue. Carpenter assumed on its facts a very limited, narrow holding that the records belonged to Carpenter. That is correct. I do not have an answer for that other than to state that the manner in which Carpenter has now been developed assumes that the issue, the important issue to deal with is not so much who owned the account, but the movement of the person. Right, but this doesn't pertain to any movement. Well, as far as Carpenter is concerned, I thought that was, you aren't alleging any of the normal four exceptions to Leon and good faith. Normally we would just reach good faith first, we wouldn't go further. You're saying there's something so novel we need to give advice and guidance, and I thought the novelty of this case is your view that Carpenter triggers some novelty rather than just can, does once an agent with 17 years experience says there's a fair probability the person who uploads will be at the computer from which it uploaded. It won't be a guest or a stranger just going by the house. On the issue of novelty, Judge, that is correct. If I may cite two citations from Carpenter that illustrate that point that you're making. The first is Carpenter explained, citing Riley, unlike the bug container in Knott's or the car in Jones, a cell phone is almost a feature of human anatomy, meaning that people carry these phones with them at all times. You cannot assume anymore that because somebody committed a crime at a house, they have computers and other media where they have to store their cache of illegal downloads. They could keep them all at a phone. The court elaborates, while individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares, and I will highlight, and into private residences, doctor's offices, political headquarters, and other potentially revealing locales. Citing the Calwell opinion, the court continues. Nearly three-quarters of smartphone users report being within five feet of their phones most of the time, with 12% admitting that they even use their phones in the shower. The point of this language, Judge, is that you can now commit a crime with a cell phone without any meaningful relationship to a house. That's what makes this case unique. I've used in my briefing the example of the Starbucks. The patron shows up, connects to the Wi-Fi, and commits all kinds of crimes by uploading and downloading child pornography. But you were able to ask exactly that same Starbucks hypothetical to the agent in the suppression hearing. Yes. Well, it looks like one of those no good deed goes unpunished. The agent did an extensive background in preparation before applying for the warrant. Well, Judge, I will respectfully disagree on the issue of extensive preparation. If I may point out the following. All of what the agent did in this case was with the information that was obtained by the agent in Florida, specifically the 30-day activity, two uploads in 30 days, that information was sent to Agent Dunnigan seven months later so that he received the case in November of 2016, I believe. When that was done, all Agent Dunnigan did was send a sheriff's officer to find out who lived at the residence. That was all that was done. Five more months passed by and he sent another, I believe another sheriff's officer or he checked to see who lived at the residence. That was not surveillance. So they had the same piece of information for a whole year before they executed the warrant. I will point out what Agent Dunnigan and the government failed to do by his own admission on the record of the hearing. The following are the failures and the lack of diligence. Failed to conduct surveillance at all. In other words, an ID check twice a year is not surveillance. Failed to research the cell phone's own IP address to find the owner. They could have done that. They didn't. He said it was impractical to do it. They could have gotten hundreds, maybe thousands of results, but he didn't say it was impossible. That would have been important. A critical issue in this case, they never found out who the owner of the cell phone was at all. And they could have, but they didn't try. They failed to attempt what we consider the dreaded knock and talk. They could have gone to the house and asked questions. Hey, you mind if we ask you for your phone number? Can we do a record search to see if there's any activity going on? We've been getting some complaints around the neighborhood of illegal uploads. But they've just got to get, they've just got, the nexus just has to be established to probable cause. But why would they want to do all that more? Because they didn't have a nexus, Judge, we're arguing. And those are our second and third grounds. Because they didn't have a nexus. You can't infer from this? No, Your Honor. Okay, would you have any circuit case that says that because strangers might walk by a house or guests might walk in, that somehow defeats the inference, the fair probability that, in fact, it is the person in the house? Well, the nexus issue is interrelated with the staleness issue in this case, Judge. Okay, you give me a case on either point. So staleness, do you have any child pornography case that says that within a year is somehow too stale? No. No. So back to my first question, do you have any nexus case? Nexus case on child pornography, no, Your Honor, we don't. So you don't have a case on either prong? Not as to child pornography, but I do have the elements and the case law cited for each of the elements. When you apply these facts, reject the finding of nexus. And that's part and parcel of the argument that these are unique facts. It's the constellation together. Yes, Your Honor. Now, one of the other, if I may, two more issues, two more failures to investigate. A failure to research the e-mail account. There was an e-mail account in the Kik app. Alex at smoth at yahoo.com, Agent Dunagan expressed that he could have investigated the e-mail and identified some people from there, adding that the Alex smoth yahoo.com account in the log could have been a valid address, though he assumed that it was not. And he could have just tried to run checks as far as would you count the e-mail address to try and confirm it. Maybe. Failed to conduct additional Kik app log searches and note who was at the residence when the iPhone accessed the Wi-Fi service. What this means is that it wasn't even necessary that anybody else continue to upload or do anything illegal after those 30 days. Once they got the IP address for the cell phone, they could have continued to monitor to see if somebody at the house was accessing the Kik app log and then go to the house and see who was going to the house. And they would have narrowed down at least a group of people. None of that was done. Instead, what the agent relied on is boilerplate language that somebody who collects child pornography generally keeps it at their house. But we don't know if the person lived at the house. We don't know if the person had any access to computers. We don't know if the person was passing by or a stranger. So that link was never established, Judge. The additional conclusions that an individual at the address was transacting in child pornography and that an individual residing at the home address shares the common characteristics of child pornographers, none of that was established, Judge, not even for probable cause. I'm just still stuck on what your client conceded in terms of his identity. I mean, I guess I see your points more forcefully in the context where there's no guilty plea and, you know, he never acknowledges anything. And you're sort of trying to make that argument, you know, on the ultimates. But it just seems you're arguing it was an imperfect or incomplete, you know, investigation that every turn wasn't turned over. But if the standard is probable cause and so forth, it's difficult to see how you prevail. Even if what you say is true, that everything that potentially, possibly, absolutely could have been done, how does that equate to relief? If I may. Let me state it this way. For you to win on the points you just made, state for me what it is you would say our holding would be in this case in your favor. Just articulate that for me. Apart from the novel issue, Judge, on the issues of staleness and nexus, I will quote Judge Maria Marina Garcia. No, no, no. That's not my question. I said, assuming that your arguments have force for this panel, I want you to articulate for me what it is you would say our holding would be from this case that would allow you to prevail. What is it we would be saying? The holding would be to suppress all of the evidence that was discovered as a result of the search. What's the principle of law that that would be anchored to is what I'm saying. In light of the cases that are there on the books, you've answered Judge Higginson's questions. No case on point on nexus. No case on point on staleness. So I'm asking you to state, assuming you win, tell me what the holding in this case is in light of the law that's there. In light of the law that's there, Judge, the court would have to find that either or. Nexus, either alone or in combination with staleness, defeats the warrant. Because either of those two also are vehicles under the Fifth Circuit case law that allow us to defeat a good faith finding. And we would anchor that holding to what? What case law we, since there's no cases that say that, I'm saying we would anchor that holding to what? Existing cases. The cases are as follows, Judge. We have Freeman. We have language from the United States versus Solorio Hernandez that I cited in my brief. And this is the language. The fact that there is probable cause to believe that a person has committed a crime does not automatically give government agents probable cause to search his house for evidence of that crime. That's the nexus issue. If I may move on to the staleness issue, which is closely interrelated. The proof must be a fact so closely related in time to the issuance of the warrants in order to justify a find of probable cause at that time. Not only was there a problem with Nexus, they waited a whole year, Judge, given the mobility of people in our society. All right, well, I think we've got your argument in terms of the year. You've answered that there's no case that says a year is too long, and I ask you to succinctly give me the holdings and you've done that. You've got a red light. So let's hear what the government has to say in response. And you've preserved your rebuttal time to come back up and either complete the thought or yes. Right. All right. Thank you, sir. Mr. Hank, is that how you pronounce it? Yes, Your Honor. Mr.  All right. Thank you. You may proceed. Yes, sir. Thank you, Your Honor. Counsel. I first want to address with this court the good faith issue. This court counsels that the first issue it turns to in the analysis is good faith. Here in this case, Special Agent Dunnigan did exactly what the Fourth Amendment and the jurisprudence interpreting the Fourth Amendment counsels that he did. He prepared an application for a search warrant and a supporting affidavit. He presented it to an assistant United States attorney who reviewed that warrant application and that affidavit. He believed that there was probable cause. He submitted it to a neutral and detached magistrate judge. That judge, likewise, found that probable cause existed. And this plays somewhat into the point that, Judge Higginson, that you were making and Judge Stewart, that in this case there was no controlling authority that would suggest the information was stale and that there was not probable cause. And so in these circumstances, Your Honor, we believe that clearly the agent subjectively had good faith that the warrant was valid. And objectively speaking, there would be absolutely no reason for him to think the warrant was invalid. In a related vein, the Supreme Court has counseled that the exclusionary rule is to be applied in circumstances where there's negligent, intentional, or reckless police misconduct. In this case, there's nothing in the record to suggest that there was any sort of misconduct by the police. And in these circumstances, the application of the exclusionary rule would be improper. The district court did ask for supplemental briefing on Carpenter, right? Yes, it did. Yes, it did, Your Honor. I saw their supplemental briefing and I just assumed it was because Carpenter was intervening. But maybe I'm wrong. I don't believe that's correct, Your Honor. I need to go back and check the record on that. But you haven't objected on standing grounds, though. I have not, Your Honor. I guess it would help me just because you just maybe describe sort of mechanically the investigation to be able to ascertain where there is probable cause that child pornography might be. In a little case like this, it was a Canadian chat room. We have an Apple laptop. We have a Sprint and a Verizon, whatever, accounts. And then also relevant are IP, what's the expression, an IP? IP address, Your Honor. IP address. Just describe to me how all those devices and come together in the sequence that the investigator has to follow to be able to make this probable cause showing. It all starts out with the chat room, right? And that's a Canadian facility? Yes, Your Honor. And in a related point, so it starts out that the investigator is part of a chat group. This is the Kik application. And the chat room in this case is 3Y0CLAN. And I would note for the court that that title suggests an interest in pedophilia or child pornography. And I think that's relevant in referring to the Allen case where this court talked about, or excuse me, the Froman case, where this court talked about how a screen name could be indicative of an interest in child pornography. But that's how it starts. The investigator, there was one upload that was done through a cell phone's cellular data network. Which network? That was a Verizon or a Sprint? That's going to be the Sprint network, Your Honor. So there's one upload through a cellular data network. There's a second upload that was done through, and for ease of convenience, I call it a router. And that's going to be a home-based internet service provider. And typically it's going to be a wireless router system that's inside the home. The second upload was done through a router. Identified with a device in the address where you eventually searched? Is that correct? Is it that straightforward? So the second upload, Your Honor, was done through an iPhone, but the iPhone was connected to the wireless router network. Okay. And that's the Verizon and the Verizon account connected to that address? That's the Verizon. It was ported to Frontier Communications. And Frontier Communications was the actual internet service provider for that home address. Okay. When they served the grand jury subpoena on Frontier Communications, it notified them. It said the account holder for this internet service account is going to be Saul Contreras, which is the defendant's father. When they ran the CIC subpoena, it had a period of about 28 days of information. And in the warrant, Special Agent Dunigan noted that a common IP address used for that CIC account is going to be the IP address located at the defendant's home. So why are we even talking about the phone? If you had evidence of an upload from the router in the home? Well, I agree, Your Honor. I think I think that there's no distinction here as to what device uploads the image. The fact is, is that the image was uploaded through a home router. And the fact is that on the CIC grand jury subpoena returns during that 28 day period, approximately 100 times that device, that CIC application, accesses the home router. And that would certainly give Agent Dunigan reason to believe, or probable cause to believe, that whoever was using that CIC application, that device, has a link or an association to the home, and a strong association to the home. It's not a one-time link. It's not twice. It's about 100 times over a 28 day period. And I certainly think that that would pass muster in showing probable cause to believe that an occupant of that home is the person who possessed the child pornography that was uploaded to CIC. And the argument they've made is that it's the Starbucks hypothetical that, well, it's possible someone walking by 100 times, each time snuck in through that Wi-Fi. Has any court, to your knowledge, district or circuit, adopted that theory to say no probable cause as to the people in the house because it's more probable it's the people outside of the house? No, Your Honor. In fact, this court has actually rejected that line of argument. In United States v. Perez, which is reported 484F3735, Mr. Perez made that same argument. He tried to argue that he, quote, used an unsecure wireless connection. The neighbors would have been able to easily use Perez's internet address to make the transmission. And this court responded by saying, but though it was possible that the transmissions originated outside of the residence to which the IP address was assigned, it remained likely that the source of the transmission was inside that residence. And then it reverted back knowing the probable cause standard is merely a fair probability. And that under these circumstances, it didn't destroy that fair probability. And that same logic would apply in this case, Your Honor. Would you, if somewhere in your presentation, tick off the distinctions between this case and Carpenter? Yes, Your Honor. I think, and I'm going to borrow from a district court that actually addressed this question outside the circuit. But I think that court did an excellent job of addressing the distinction. That case is United States v. Tolbert. It's from the District of New Mexico. And similarly, in that case, Mr. Tolbert was contending that it was improper for law enforcement to use grand jury subpoenas directed towards AOL and CenturyLink to find out identified information related to his IP address and his email accounts. And the Tolbert court noted that there's two lines of Supreme Court cases. There's United States v. Biller, which talks about no expectation of privacy in bank records. And Smith v. Maryland, which talks about no expectation of privacy in records of dialed telephone numbers conveyed to a telephone company. And that's one line of cases that talk about no expectation of privacy. And then Carpenter talked about an expectation of privacy as far as a person's location movements. And the court in Tolbert held that the information regarding IP addresses, subscriber information, is much more like the bank and telephone records in Miller and Smith. And whereas Carpenter is much more personal or privatized information. And the court here, and I'll just quote from it. The privacy interest in this type of identifying data, which presumably any AOL or CenturyLink employee can access during the regular course of business, simply does not rise to the level of the evidence in Carpenter such that it would require law enforcement to obtain a search warrant. The grand jury subpoenas were valid. And I believe that's the distinction, Your Honor. It's not that level of personal private information that was at issue in Carpenter. I also would note the standing issue for the court. That there's not been a showing by the appellant that he would have standing to challenge the subscriber information for his father as far as his internet service account at the house. We believe that the record in this case overwhelmingly demonstrates that Special Agent Dunnigan reasonably and in good faith relied upon the validity of the warrant. And under the good faith exception, we believe that the exclusionary rule is inappropriate. Even assuming that good faith doesn't apply in this case for some reason. The magistrate judge had a substantial basis for finding probable cause. And at the outset, I would note for the court two important considerations. First, this is a probable cause standard, not proof beyond a reasonable doubt. Second, a magistrate judge's determination of probable cause is entitled to great deference by reviewing courts. I've cited my brief to United States v. Perez, and I won't go into the details of the facts of that case, but similar to what we had in this case, investigators were able to link the distribution of child pornography to a certain IP address located at a residence. With that information, they obtained a search warrant for that residence. We believe in several respects this case is similar to the Perez case, and therefore, establishes probable cause. The Sixth Circuit and Tenth Circuit have each addressed situations analogous to that in Perez. And again, those are cited in the brief, and that's going to be United States v. Gilman and United States v. Renegard. I'd like to talk a little bit now about the appellant's argument that somehow the cell phone changes analysis, and I've talked a little bit about this. I don't think the device used to access the home router changes the analysis in any way. As this court is well aware, with the advance of technology, devices have become smaller and much more powerful. And indeed, a cell phone today is much more like a microcomputer than it is a cell phone. There are two district court opinions that talk about whether this changes the analysis. And the first one is going to be United States v. Sko, and that's an opinion from the Northern District of Georgia. And that court addressed a similar argument to the one that the defendant makes here. And in that case, he argued that somehow the use of an iPhone, as opposed to a stand-alone computer or a desktop computer, changed the analysis. And the court in that case said, defendant had an Internet account linked to his residence address that provided Internet service at his residence. To say that the defendant did not probably have a computer at home connected to his Internet service account contradicts common sense and experience. This is particularly so where the evidence shows that defendant used and maintained an iPhone through his home IP address, and that iPhones are usually activated from a home computer and are usually updated and synced through a home computer connection. And like in that opinion, Your Honor, in this case, the affidavit notes the interrelationship between iPhones and between computers. Special Agent Dunnigan notes that the iPhone can be hooked up to a stand-alone computer, a laptop computer, and there it can be synced with that computer, and it acts as a backup for the information. Special Agent Dunnigan also noted that child pornography collections are highly valued for child pornography collectors. They're very important to them. Those collections are often maintained in the home. It would be a fair probability that the information in the iPhone would have been backed up to a hard computer. And indeed, the presence of a router and an Internet service at a specific address would corroborate that. I next want to turn to the question of staleness, Your Honor. As this Court has noted already, the question is whether the information was so dated as to render official belief in adequacy unreasonable. And as this Court has noted during the appellant's argument, there's no case out there that would hold in the context of child pornography that a period of less than one year is stale. And in fact, this Court's jurisprudence goes the other way. In United States v. Allen, this Court held that information 18 months old was not so stale as to render official belief in its adequacy unreasonable. The Allen Court likewise cited United States v. Frechette and United States v. Lacey, cases that had similar periods, and noted that those periods did not render the information stale. The less than one year old information in this case is well within the boundaries that have been set by this Court, and accordingly, we believe that the staleness argument fails. With regard to the over breadth of this search warrant, the appellant makes the argument that the warrant should have been to search for an iPhone only. And this Court's case law and other Court's case law have been clear that the specificity required for a warrant depends upon the nature and the circumstances of the investigation. Here, the investigation was that a person was uploading child pornography. At the time, the investigators had no idea and could not know where the items of child pornography would be stored. I've cited for the Court the case United States v. Rousseau. I would also like to direct the Court's attention to United States v. Brunson. That's a District Court case from the Western District of Texas. It's a 2010 Westlaw 11545746. And that District Court notes that in its review of Fifth Circuit case law, that it upholds warrants in child pornography cases for a range of materials so long as the objective is to search for child pornography. And that's exactly what we had in this case. We didn't know exactly where the child pornography would be located, but the attachment B to the search warrant, it directed the agents to look only for child pornography in the electronic devices. Because of that, we don't believe that the warrant was overbroad. And finally, Your Honor, I would like to turn and talk a little bit about the Carpenter and Location data. I've already talked to the Court about United States v. Tolbert and how this is a far different situation than that present in Carpenter. I would also direct this Court's attention to United States v. Wiest. That's reported at 811 F3rd 743. That's a case from this Court in 2016. In that case, cited with approval of the Third Circuit's opinion, that subscriber information provided to an Internet provider, including IP addresses, is not protected by the Fourth Amendment's privacy expectation because it is voluntarily conveyed to third parties. In that case, the Court held that police accessing the defendant's IP address did not violate the Fourth Amendment. And we believe that consistent with Wiest and consistent with the analysis in Tolbert, the information at Carpenter is far different from the information that law enforcement obtained in this case. There's no sentencing issue in front of us? No, Your Honor. He got about 15 years? Yes, Your Honor. Do you remember if that was upward variance? It was within guideline sentence, Your Honor. All right. Thank you, sir. Thank you, Your Honor. All right. Counsel, you reserve rebuttal time. Several points. Judge Higginson, you mentioned an Apple computer. I think that may have just been an error, but it was an iPhone. I thought it was an Apple laptop. No, Your Honor. Well, the item that was used to upload was a cell phone. No. Okay. Go ahead. Yes, Your Honor. They found child pornography in other items at the house, which may have included what you mentioned. There's no evidence of an upload at the home. That's the issue. The critical issue here is the cases cited by the government include situations where we know that the person that is investigated has a link to the home. Those cases that were cited also include, are much older, did not involve iPhones or cell phones. So it is assumed that somebody at the house possessed child pornography, and when the staleness argument was presented, it was rejected on the basis that knowing that somebody possesses child pornography, that person will keep it for many years. We don't have any qualm with that proposition. No problem with that. That is accepted, and it's well-established Fifth Circuit law. The problem here is we don't know who the person was that did this one single upload from the Wi-Fi connected to the home. One single upload, even though they had contact with that Wi-Fi for that period of time. Also, we don't know if there were computers. We don't know if there was child pornography stored at the residence, other than with the cell phone. We don't know if somebody transferred anything from a cell phone to a home. That presumes that the person had substantial connections to the home, which we don't have any evidence of. All we know is that somebody, in some manner or another, either as a stranger or as a temporary resident, accessed the Wi-Fi service for that period of time and committed one act of an upload. To then believe that because we have one act of an upload a year later by an unknown person, you're going to go and find child pornography at that residence without even knowing who lives at the house or what connection a person has with that house is simply too attenuated in combination, lack of nexus and staleness to support probable cause for the search. Each of these two grounds defeats, with the proper facts we believe we've provided them, the fine of good faith. So those are the arguments we want to ensure we present, we clarify to the court. The matter in Carpenter about the IP address, there is Fifth Circuit law that has rejected the argument that IP addresses are subject to Fourth Amendment protections. That is true. However, the issue in this case is special. The facts are worth noting. In this case, there was a discovery of an IP address to the cell phone in the kick lock. However, that IP address did not render the address for the home. There still had to be a couple of subpoenas issued to each of the phone providers so that by knowing the IP address, you could find out who the providers are. That's not a problem. But they still had to send subpoenas instead of warrants, which we argue, to each of the providers to then disclose the location of the Wi-Fi. The location of the Wi-Fi in this case is the location in or about the circumference of the home of the person that did the upload. And so under Carpenter's, consistent with Carpenter, that information disclosed the location or the whereabouts of the person that did the uploads. That's the connection with Carpenter. And because that specific information was obtained without a warrant, we have raised the issue under Carpenter. We believe that the facts also respond to Chief Judge Stewart that there is no case on point on these facts. But that makes this case special. It requires the court to reconsider its application of law to ordinary facts. We're not dealing with laptops or desktops at homes that collect dust over years. It's a very mobile society. All of the illegal uploads, all of the illegal activity that a person does once or twice while having some unknown connection to a home, can all be contained within a cell phone now. Times have changed. We're asking the court to consider that. And determining that we have facts that are too attenuated, combined with a lack of diligence by the agency, could have done more old-fashioned diligence, old-fashioned work, to find out who at least the resident of the house connected to the phone was. None of that was done. And so the example of the Starbucks patron is very much on point, albeit without the traffic. Anybody could have gone in there, broken the law, and now a year later we go in there and search a home without knowing who it was or what connection they had to the home. And we ask the court to suppress the evidence. All right. Thank you, Counsel. Appreciate your briefing and able argument on behalf of your client. Thank you from the government also. Interesting case, as always. The case will be submitted and we will decide it. I have one more point, Your Honor, if I may. Very briefly. On point number four, it is not our intention to ask the court to remand the case and accept evidence that was obtained from the iPhone. We are agreeing that it was over-breath, but overall arguments one through three, because of a lack of nexus, probable cause, and staleness, there should not have been anything surviving the search. Everything should be suppressed. Thank you, Your Honor, for allowing me to say that. All right. Thank you, sir. All right. Thank you. We'll call the next case up.